UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEREK ATWATER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 1:22-cv-01669-JMS-MG |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**ORDER DENYING MOTION FOR PRODUCTION OF DOCUMENTS AND
GRANTING TIME TO FILE REPLY BRIEF**

Petitioner Derek Atwater was alleged to be a member of the notorious Richard "Grundy network[]." *United States v. Vizcarra-Millan, et al.*, 15 F.4th 473, 482 (7th Cir. 2021). Atwater, along with 21 others, was charged in a 25-count superseding indictment with three counts relating to the distribution of methamphetamine, *see* 21 § 841(a)(1), & 846. *United States v. Atwater,* 1:17-cr-222-JMS-TAB-6 (hereinafter "Crim. Dkt"), Crim. Dkt. 280. Following a three-week jury trial, Atwater was convicted on all the charges against him. *Vizcarra-Millan*, 15 F.4th at 482. He was sentenced to an aggregated 216-month term of imprisonment. Crim. Dkt. 1101.

Atwater filed this civil action seeking to vacate the sentence and judgment pursuant to 28 U.S.C. § 2255. He alleges that he is entitled to relief because his counsel was constitutionally ineffective based on the failure to file a timely motion to suppress evidence, dkt. 1 at 4, failure to play an FBI interview at trial, *id.* at 5, failure to challenge Atwater's involvement in the conspiracy on appeal, *id.* at 7, and failure to properly argue the buyer-seller issue on appeal where Atwater was only fronted drugs five times, *id.* at 9. Now before the Court are multiple discovery related motions.

## I. Standard of Review

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley,* 520 U.S. 899, 904 (1997). Rule 6(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, states: "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." Merely pursuing collateral relief is insufficient to entitle Atwater to discovery, he must also "make a colorable claim of a constitutional violation and show good cause." *United States v. Brown*, No. 22-2667, 2023 WL 3391473, at *1 (7th Cir. May 11, 2023) (citing *Hubanks v. Frank*, 392 F.3d 926, 933 (7th Cir. 2004) (petition under 28 U.S.C. § 2254); Rule 6(a) of the Rules Governing Section 2255 Cases in the United States District Courts).

## II. Security Concerns

Atwater's discovery requests must be considered in the context of his criminal proceeding. Some of the defendants and/or their associates attempted to both intimidate witnesses and tamper with the jury at trial. As the Seventh Circuit explained:

> Trial got under way on July 8, 2019, in Indianapolis. The court took the unusual step of empaneling an anonymous jury after the government came forward with evidence of attempted witness tampering and intimidation. The court provided juror information to defense counsel but forbade the defendants themselves from learning the jurors' names or detailed personal information from which they could be identified. The first trial did not last long. By day three, the district court learned that, despite the precautions, some defendants had gotten their hands on this confidential information. Moseby had written down the names of several jurors. Grundy had obtained partially redacted juror questionnaires. The district court declared a mistrial and moved the trial venue to Evansville.

*Vizcarra-Millan*, 15 F.4th at 484. Those concerns continued at the Evansville trial:

> The district court, already alert to the grave security concerns in the case, had taken the unusual step of empaneling an anonymous jury based on concerns about juror intimidation. The first trial ended in a mistrial, in part because Grundy

2

> himself obtained confidential juror questionnaires. The transcript of the *Faretta* hearing also indicates that he was placed in solitary confinement as a result of the conduct that led to the mistrial. Given this backdrop, Grundy posed obvious and legitimate security concerns, even with counsel . . . . A core part of the district judge's job is to protect jurors, witnesses, and the integrity of judicial proceedings more broadly.

*Id.* at 490.

### III. Motion for Production of Documents

Atwater's motion for production of documents seeks a copy of the affidavit and warrant issued by the magistrate judge to search his home on November 17, 2017, and a copy of the statements a government witness provided to the FBI. Dkt. 12. The United States responded arguing that Atwater cannot show good cause for his requests and that permitting him access to cooperator interviews is dangerous. Dkt. 13 at 1.

As a preliminary matter, the United States reports that discovery and *Jencks* Act materials, including the November 17, 2017, search warrant affidavit for the search of Atwater's residence, the FBI's video interview of the relevant cooperating witness, and the FBI 302 written report of that witness's interview were provided to all defense counsel, including attorney Joshua S. Moudy who was appointed to represent Atwater. Crim. Dkt. 141, 453, 460, 1017. A protective order was issued in relation to these materials. Crim. Dkt. 453, 460.

For the reasons explained below, Atwater's motion for production of documents, dkt [12], is **denied.**

### A.  Affidavit and Warrant for November 17, 2017, Search

First, Atwater seeks a copy of the affidavit and warrant issued by the magistrate judge to search his home on November 17, 2017. Atwater asserts that these copies will support his claim that his counsel was ineffective in failing to file a motion to suppress the evidence collected during the November 17, 2017, search. Dkt. 12 at 2. In reply, Atwater clarifies that the warrant failed to

3

describe with particularity the actual items of evidence sought and to link that evidence to the criminal activity. Dkt. 17 at 2.

Atwater is mistaken. As the United States points out in its response, the record reflects that on the seventh day of trial, Atwater claimed that the affidavit supporting the November 17 search warrant for his residence lacked a nexus between drug trafficking activity and his residence. Crim. Dkt. 943 at 103-107. The court considered and denied the motion, finding that probable cause existed that Atwater was dealing drugs, the warrant tied him to his residence, and, regardless, the officers acted in good faith. Crim. Dkt. 943 at 133–34, 136–38.

Atwater, with the assistance of Moudy, appealed. *Vizcarra-Millan*, 15 F.4th at 482. He challenged the denial of his request to suppress the evidence seized from his residence. *Id*. He also contended that there was insufficient evidence to support his conspiracy conviction. *Vizcarra-Millan*, 15 F.4th at 485. The Seventh Circuit disagreed and affirmed his convictions. *Id.* at 501-02, 508-09.

Given this procedural history, Atwater has failed to show good cause for this request. The record shows that despite the motion being untimely, a motion to suppress the November 17, 2017, search was decided on the merits and the Seventh Circuit affirmed the denial. Dkt. 13 at 7-8. The Seventh Circuit explained that there was sufficient probable cause supporting the search warrant. "The warrant application provided facts showing that Atwater was a drug dealer, that a specific residence was likely his house, and that based on those facts, in the experience of the affiant, it was likely that he had drugs or evidence of dealing in the home." *Vizcarra-Millan*, 15 F.4th at 501-02. Thus, there "was enough to support the magistrate judge's common-sense determination that there was a reasonable probability that Atwater lived there and that the police would find drugs or other evidence of drug-dealing there." *Id.* at 502.

Thus, Atwater cannot demonstrate good cause for his request for the production of the affidavit and warrant issued to search his home on November 17, 2017. His counsel cannot be found ineffective for failing to challenge the warrant under these circumstances. *See Robinson v. United States*, No. 03-CV-1112, 2004 WL 324878, at *4 (S.D.N.Y. Feb. 19, 2004) (finding baseless ineffective assistance of counsel claim in § 2255 motion where petitioner's "attorneys in fact raised the issues . . . that are the basis for his petition"); *Strahn v. United States*, No. 10-0950-DRH, 2012 WL 5380331, at *4 (S.D. Ill. Oct. 31, 2012) (defense counsel "cannot be faulted for not doing something he clearly did."). Further, given the record in this case, the United States' concerns that the production of the sealed warrant and affidavit could be used for nefarious reasons is well taken. Specifically, the documents could potentially be used in an effort to harm those who cooperated with law enforcement in the investigation of the Grundy network. *See* dkt. 13 at 8-9.

Accordingly, the request for production of the affidavit and warrant issued by the magistrate judge to search Atwater's home on November 17, 2017, is **denied.**

### B. Witness Interviews

Second, Atwater also seeks a copy of the video recording and FBI's 302 report of the FBI's post-arrest interview of a particular cooperating witness, which occurred on November 16, 2017, and the FBI's 302 report of the witness's proffer statement. Atwater believes these materials will support his claim that the witness never stated that he sold Atwater methamphetamine and lied at trial. Dkt. 12 at 3. According to Atwater, had attorney Moudy played the video interview of the witness's post-arrest statement to the FBI at trial, it would have shown that the witness lied when he testified that he sold methamphetamine to Atwater. Dkt. 1 at 5. However, during the witness's direct examination, the witness admitted that he lied to the FBI during his post-arrest interview. Crim. Dkt. 915 at 193-94. The witness stated that he denied selling methamphetamine and denied

5

engaging in drug transactions with Richard Grundy. *Id.* The witness testified that his statements to the FBI immediately after his arrest were not truthful. *Id.* Thus, playing the recording of the post-arrest interview would only have duplicated the witness's testimony wherein he admitted that he falsely denied involvement in the conspiracy when confronted by the FBI after his arrest. Instead of playing the video, Moudy vigorously cross-examined the witness. Crim. Dkt. 927 at 11-22. In reply, Atwater argues that attorney Moudy failed to impeach the witness with his prior statements. Dkt. 17 at 7. But the record reflects otherwise, that counsel was not successful in getting the jury to find Atwater not guilty, does not mean that he failed to offer impeachment evidence. Under these circumstances, the Court cannot conclude that production of the video would have affected the outcome of the case.

The United States argues that given these facts, Atwater's claim is a mere fishing expedition that should be denied. Dkt. 13 at 10. In addition, the United States notes that the witness's testimony that he sold methamphetamine to Atwater was corroborated by wiretap evidence. *Id.* at 11.

The United States further argues that the Grundy network poses "grave security concerns." *Vizcarra-Millan*, 15 F.4th at 490. The Court is well aware that cooperators generally face threats to their security, and it is difficult to envision a more grave security threat than a member of the Grundy network obtaining a cooperator's interview while in prison. Given their lack of probative value, the release of the materials is especially unwarranted.

The Court agrees with the United States that Atwater has not shown good cause for this discovery. Atwater wants to use these materials to show that the United States' witness lied. But the fact that the witness provided false statements in his post-arrest interview was admitted by the witness and forcefully explored at trial. Based on the overwhelming evidence that Atwater sold methamphetamine that was independent of the witness's testimony, good cause has not been shown

6

for the production of the witnesses statements to Atwater. *See* dkt. 13 at 13-15 (describing wiretap calls, text messages, law enforcement testimony and the seizure of evidence that corroborate Atwater's methamphetamine dealing).

### C. Transcripts

Finally, Atwater asserts that his sentencing transcripts (which have already been produced and are available through PACER) support his challenges to the buyer-seller issue and charge of prosecutorial misconduct. Dkt. 12 at 3; dkt. 17 at 9. Atwater appears to already has access to these materials as evidenced by his pinpoint citations. Dkt. 12 at 3*;* dkt. 17 at 8- 9. In addition, he does not need the Court's permission to access these materials through PACER. Accordingly, his request for production of transcripts is **denied.**

### IV. Time to File Reply In Support of § 2255 Motion

Atwater's motion for time to file a reply to the United States "Response in Opposition to 28 U.S.C. § 2255", dkts [18], [19], and [20], are **granted.** Atwater shall have **through July 17, 2023**, in which to file his reply.

### V. Conclusion

Atwater's motion for production of documents, dkts. [12], [18], and [19], are **denied.** His motion for time to file a reply in support of his § 2255 motion, dkts [18], [19], and [20], are **granted.** Atwater shall have **through July 17, 2023**, in which to file his reply.

IT IS SO ORDERED.

Date: 6/6/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

DEREK ATWATER
16024-028
PEKIN – FCI
PEKIN FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 5000
PEKIN, IL 61555

Bradley A. Blackington
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
bradley.blackington@usdoj.gov